IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| James R. Bullis, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | Civil File No. 3:06-cv-102 |
| | ) | |
| Minnesota Lawyers Mutual Insurance Company, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant's Motion for Judgment on the Pleadings (Doc. #9). Plaintiffs filed a brief in opposition (Doc. #13) and moved for summary judgment (Doc. #19). Defendants filed a brief in opposition (Doc. #27).

**SUMMARY OF DECISION**

James R. Bullis is insured under a professional liability insurance policy underwritten by Minnesota Lawyers Mutual Insurance Company. The policy provides coverage for claims against Bullis resulting from the rendering or failing to render legal services for others. The policy also excludes from coverage various claims, including those alleging the insured's promotion, solicitation, or sale of securities and those arising out of dishonest or criminal acts. Bullis, Bruce Hagar, ProEquities, Inc., Michael Volk, Phillip Dodd, and Scott Wilson were sued in a state court action by several plaintiffs who had invested in companies created by Bullis. Because the claims in the underlying action allege a scheme to violate North Dakota securities laws and are not a claim for malpractice, the policy does not afford coverage to Bullis. Even if the claims could be characterized as legal malpractice claims, all four counts are excluded both

1

as claims arising from criminal acts and as acts arising from the promotion and sale of investment securities by the insured.  Because none of the claims alleged in the underlying action indicated potential liability and a possibility of coverage, the insurance company appropriately denied coverage, and Defendant's Motion for Judgment on the Pleadings is **GRANTED.**

## FACTS

Minnesota Lawyers Mutual Insurance Company ("MLM") issued a professional liability insurance policy to Montgomery, Goff, and Bullis, P.C.  Bullis, as an employee of the law firm, was insured under that policy.

The policy is a claims-made policy, and its statement regarding coverage is:

> WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES:
>
> (1)  Due to any CLAIM arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
>
> (2)  Resulting from the rendering or failing to render legal or notary services for others, including acts, errors or omissions as administrator, conservator or guardian, executor or personal representative, trustee or escrow agent, title insurance agent, mediator, arbitrator or other participant in a dispute resolution process.
>
> Provided, however, a CLAIM is covered only if first made and reported to US during the POLICY PERIOD and the CLAIM results from a wrongful act, error or omission which occurred on or after the retroactive date shown on the prior acts endorsement attached to this policy.  A CLAIM is deemed first made and reported on the date you first report an incident or demand to US or OUR agent.

(Doc. #7-2) There are numerous exclusions listed in the policy as well.  The policy excludes, among other things:

> (1) any CLAIM for DAMAGES arising out of the dishonest, criminal malicious or deliberately fraudulent act, error or omission of the INSURED.

>       ***
>       (3) any CLAIM arising out of legal services or advice rendered by any INSURED in connection with any business not named in the declarations:
>           (a) which is owned by any INSURED;
>           (b) in which any INSURED is a partner or employee; or
>           (c) which is controlled, operated or managed by any INSURED individually, or in a fiduciary capacity, including the ownership, maintenance or use of property.
>       This exclusion does not apply if at the time such legal service or advice was rendered, any INSURED had a total pecuniary or beneficial interest of less than 10% of such business enterprise.
>       ***
>       (6) any CLAIM arising out of an INSURED's activities as an officer or director of an employee trust, charitable organization, corporation, company or business other than that of the named INSURED.
>       ***
>       (13) any CLAIM arising out of:
>           (a) promotion, solicitation or sale of securities or other investments by the INSURED; or
>           (b) performance of securities or other investments recommended, directed, or made by the INSURED.

Id.

The facts that gave rise to this case are as follows: At all relevant times, Bullis was legal counsel for Michael Volk. Bullis aided Volk in forming three North Dakota companies – Softech Venture Group, LLC ("Softtech"), Softech Venture Group Series B, LLC ("Softech B") and Softech Venture Group Series C, LLC ("Softech C"). Bullis was the registered agent for these three entities. Softech "membership units" were sold to investors. These membership units were not registered under the North Dakota Securities Act, nor were the transactions exempt under the North Dakota Securities Act.

The investors never received any stock, nor did they receive a return on their investments. Bullis, Volk, and others were sued in state court ("the Ward action"). The complaint in the Ward action alleged that Bullis acted in concert with Volk and others to create a

"shell" corporation, solicit and mislead investors, purposely sell unregistered securities, and more or less defraud investors and others. Bullis timely forwarded the complaint to MLM. MLM denied coverage and its duty to defend, citing exemption (13), above. Bullis kept in contact with and updated MLM, who continued to deny coverage. Bullis funded his own defense in the underlying action, and he was successful. Judge Romanick ultimately found that Bullis acted only as an attorney in these matters. In his order granting summary judgment in favor of Bullis, he stated,

> By plaintiffs own accounts Bullis did not solicit their purchase of the securities. Bullis appears to have acted in the role of an attorney in preparing documents, delivering documents, receiving funds into an escrow account and not as an agent under the definition of agent in NDCC 10-04-02(1). Using this definition of agent, this Court finds that there is no genuine issue of material fact raised by Plaintiffs that would qualify Bullis as an agent. Finding Bullis is not an agent ends the inquiry of liability for Bullis and summary judgment is granted.

(Doc. #14). Judge Romanick's summary judgment order was appealed, and that appeal is pending. Bullis filed this action in federal court.

## DISCUSSION

At the outset, the parties disagree as to whether a Rule 12(c), Fed. R. Civ. P., judgment on the pleadings is appropriate. Both the Rule 12(c) motion and the Rule 56 Summary Judgment motion are appropriately before the Court, and the issues are virtually interchangeable. A motion under Rule 12(c) may be treated as one for summary judgment if matters outside the pleadings are presented. The Court will therefore dispose of these motions under Rule 56, Fed. R. Civ. P.

Summary judgment is appropriate if the pleadings, discovery, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(c); Quick v. Donaldson Co., 90 F.3d 1372, 1376 (8th Cir. 1996).  On a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Mere allegations are insufficient to defeat summary judgment.  Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999).  The non-movant must make a sufficient showing on the essential elements of his case and may not rest on mere denials or allegations in the pleadings.  Anderson, 477 U.S. at 250.   Here, the determination of coverage is dependent on interpretation of the insurance contract.  Interpretation of an insurance policy is a question of law.  Northwest G.F. Mut. Ins. Co. v. Norgard, 518 N.W.2d 179, 181 (N.D. 1994).  Thus, the case is ripe for determination.  This is a diversity action, and therefore, the law of the forum state applies.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

**The Insuring Agreement.**

The parties agree that MLM had a duty to defend the underlying action against Bullis if the allegations in that complaint gave rise to potential liability or even a possibility of coverage.  (Doc. #21, p. 8, and Doc. #27, p. 3) (both citing Nodak Mutual Insurance Company v. Heim, 559 N.W.2d 846, 849 (N.D. 1997)).  The parties' perception of the underlying Ward complaints is the fundamental dispute:  MLM argues there are no allegations in the complaint that showed potential liability or the possibility of coverage, while Bullis argues that the complaint, augmented by his answer and Judge Romanick's decision, indicate there was potential liability or the possibility of coverage.

Heim states:

> Ordinarily, an insurer has a duty to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a

> possibility of coverage under the insurance policy. Any doubt about whether a duty to defend exists is resolved in favor of the insured. When several claims are made against the insured, the insurer has a duty to defend the entire lawsuit if there is potential liability or a possibility of coverage for one of the claims.

559 N.W.2d at 859. Bullis encourages the Court to "look 'beyond the face of the complaint'" in evaluating MLM's duty to defend (Doc. #21, citing Ohio Cas. Ins. Co. v. Clark, 583 N.W.2d 377 (N.D. 1998)) and resolve any ambiguities in favor of coverage. Grinnel Mut. Reinsurance Co. v. Lynne, 686 N.W.2d 118 (N.D. 2004). Although Bullis is correct that Clark allowed for a limited investigation beyond the pleadings by the trial court to determine whether the insured's acts were intentional or unintentional, 583 N.W.2d at 380, generally, the Court is limited to the face of the complaint. See Heim, 559 N.W.2d 846; National Farmers Union Property and Cas. Co. v. Kovash, 452 N.W.2d 307, 309 (N.D. 1990). This approach is consistent with the general rule: "The duty to defend depends on the nature of the allegations in the underlying dispute, not the ultimate resolution of disputed factual issues." 22-136 Appleman on Insurance § 136.2. The policy and the underlying complaint control whether the plaintiff seeks recovery on the basis of a covered risk. First National Bank v. St Paul Fire and Marine Ins. Co., 971 N.W.2d 142, 144 (8th Cir. 1992) (interpreting North Dakota law). In the absence of other proceedings it is presumed that outside the complaint is not available to the insured for the determination of its duty to defend. Id. The insurer should, however, consider other information provided to it. Id.

      The original Complaint and First and Second Amended Complaints contain a number of allegations and statements pertaining to Bullis's role in the events that transpired. Some of the factual allegations describe Bullis's role as an attorney for the Ward defendants, but there are no allegations that he represented or advised the Ward plaintiffs. Furthermore, these paragraphs describing Bullis's role as attorney do not allege any wrongdoing. For example, the complaint

stated that Bullis was the attorney for the defendant business entities and their owners, formed the corporations, and held funds. (Docs. #22-2, 22-3 and 22-5). Such statements do not indicate any potential liability and, thus, there was no possibility of coverage.

The "factual allegations" also contains numerous allegations that Bullis committed illegal acts or was engaging in the promotion or sale of securities including that:

- The Softech entities were created for the sole purpose of obtaining further investments in Intellisol, without proper registration.

- Bullis and others solicited and arranged for investments, both inside and outside of North Dakota, in Intellisol through the Softech entities. A total of $329,300 was solicited from the plaintiffs in the underlying state action, but over $2 million was solicited from all investors.

- Bullis and others told investors that investments in Softech were really investments in Intellisol.

- Bullis and others told investors that the Softech entities were being used as shells to pool funds for Intellisol.

- Bullis and others told investors that Intellisol was in excellent financial condition, and investments in Intellisol would yield a 300 to 400 percent return in a short period of time.

- Bullis and others failed to provide financial disclosures or stock certificates to investors or inform them of the poor financial condition of Intellisol.

- Bullis and others violated several North Dakota statutes dealing with the securities sales and fraud.

(Docs. #22-2, 22-4, and 22-5).

More importantly, there are four causes of action alleged against Bullis. Count I alleges a violation of N.D.C.C. § 10-04-04, which requires registration of securities. Count II alleges a violation of N.D.C.C. § 10-04-10, which restricts sales of securities to registered dealers or agents. Count III alleges a violation of N.D.C.C. § 10-04-15, which prohibits numerous fraudulent, deceptive, or misleading statements or acts in connection with the offer, sale, or

purchase of securities. Count IV alleges Bullis made or contributed to the making of false or fraudulent representations of fact in connection with the investments in Intellisol-Softech.

      The insuring agreement in the MLM policy provides that MLM will pay all sums up to the limit of liability due to a clam arising from an act or omission of the insured resulting from the rendering or failing to render legal services for others. Thus, the insurer only has a duty to defend if the complaint and other information provided to MLM fits within the insuring agreement. First National Bank, 971 F.2d at 144. An insurer need not provide a defense for an insured if the charge against the insured is foreign to the risk insured against. Donnelly v. Transportation Ins. Co., 589 F.2d 761, 765 (4th Cir. 1978). Because the insuring agreement gives rise to coverage resulting from the rendering of legal services the court must look to the complaint to see if that conduct is alleged. Coverage turns on the nature of the insured's conduct. General Acc. Ins. Co. v. Namesnik, 790 F.2d 1397, 1399 (9th Cir. 1986).

      The existence of an attorney-client relationship is not dispositive of the question of whether the conduct constitutes "legal services." General Acc. Ins., 790 F.2d at 1399. In North Dakota, an action for professional negligence generally involves establishing the existence of the attorney client relationship, a duty to the client, and a breach of the duty resulting in damages caused by the breach. Minn-kota Ag. Products. Inc v. Carlson, 684 N.W.2d 60, 64 (N.D. 2004). The attorney-client requirement is not necessarily universal. One court held that professional liability can arise out of an attorney's activities with those other than his own client. Westport Ins. Corp. v. Bayer, 284 F.3d 489, 494 (3rd Cir. 2002). In Westport Ins. Corp., the Third Circuit Court of Appeals concluded that under Pennsylvania law there was coverage under a professional liability policy for a suit brought by non-client investors against an attorney,

alleging misrepresentation and fraud stemming from the attorney's alleged "Ponzi" scheme. Westport is not controlling here, however, for several reasons. At the outset, Pennsylvania law presumes the phrase "professional service" may give rise to a finding of ambiguity in an insurance policy. Id. at 497. Furthermore, the lawyer in Westport was found to have been "holding himself out as an attorney who [was] watching over the [plaintiff's] investments." Id. Most importantly, the attorney in Westport attached an addendum to his professional liability insurance application that detailed, more or less, the conduct he was engaging in, which the Court concluded "indicate[d] his reasonable expectation that his work . . . would be covered." Id. at 498. These factors are not present in the instant case, and therefore Westport is not applicable.

Following controlling law, there is coverage only for claims arising from the provision of legal services, not for claims like those in this complaint of a scheme to sell unregistered securities. The complaint alleges that Bullis is a lawyer, and his successful defense in the Ward action established that he was only the lawyer and not a seller or solicitor of the securities. The fact that Bullis established a complete defense to the suit for the alleged illegal securities scheme, that of factual innocence, does not make MLM responsible to defend a claim outside the scope of coverage of its malpractice policy. The complaints do not allege any claim that Bullis was obligated to pay because of legal services he rendered or failed to render. The securities scheme as alleged did not seek damages for professional negligence and thus was not within the insurance coverage.

**Policy Exclusions:**

Even if the court were to conclude that the conduct alleged in the complaints fell within

the insuring agreement, the policy excludes coverage for "any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED." Under North Dakota law exclusion from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer. Grinnell Mut. Reinsurance Co. v. Center Mutual Ins. Co., 658 N.W.2d 363, 370 (N.D. 2003). The court, however, will not rewrite the insurance contract to impose liability. Id.

Here, whether limited by the complaint's allegations or not, it is clear that the conduct complained of in Ward involved criminal or dishonest conduct and the promotion or sale of unregistered securities. No reasonable interpretation of the allegations would indicate that Bullis was being accused of committing legal malpractice or any other act or omission covered by the professional liability policy. Bullis fails to persuade the Court that any specific claim asserted in the complaint that would give rise to such coverage; he argues the Court should consider his defense and Judge Romanick's Order, purportedly to show the Court that the allegations in the complaint are groundless. It is inappropriate for the Court to consider such evidence, however, because "[i]nformation outside the complaint, in the absence of other proceedings, would not be available to the insurer for the purposes of determining whether or not there is an obligation to defend the principal action." Applegren v. Milbank Mut. Ins. Co., 268 N.W.2d 114, 118 (N.D. 1978).

The complaints allege in Count I that the Ward defendants violate North Dakota law by selling unregistered securities. Count II alleges that the Ward defendants made materially false statements and omitted material facts in soliciting investors in connection with the sale of securities. Count III alleges intentional and negligent misrepresentation with regard to the

security sales.  Finally in Count IV, Plaintiffs allege that the solicitation of investors breached a duty of loyalty and honesty which constituted constructive fraud.  With the exception of the negligence alleged in Count III, all the acts complained of were are deliberate and intentional.  All are violations of North Dakota securities law.  The MLM policy might not exclude coverage for the negligence allegation in Count III were it not for the securities exclusion in the policy.  That exclusion provides that no coverage exists for "any CLAIM arising out of: (a) promotion, solicitation or sale of securities or other investments by the INSURED; or (b) performance of securities or other investments recommended, directed, or made by the INSURED."  Here, all the counts against Bullis arise from his alleged role in the purported securities scheme.  That he was ultimately found only to have worked as an attorney for some of the other defendants does not change the fact that the complaint only charged intentional illegal securities solicitation and sale.

   As a final note, the fact that he was not covered for securities claims like this should not have come as a surprise to Bullis.  This claims made policy was effective for claims made in calendar year 2003.  It has a prior retroactive acts endorsement.  In the application for coverage the firm was asked whether the firm had engaged in and securities or bond practice in the previous twenty four months.  Bullis was managing partner for the firm and he affirmatively represented that no attorneys in the firm had engaged in bond or securities practice in the twenty four months preceding the November 2, 2001 date on which the practice areas form was completed.  Thus at the time the Softech entities were being formed by Bullis and the alleged Softech scheme was being implemented, Bullis represented to MLM that neither he nor any other lawyers in the firm were involved in any securities work.  Given this disclosure it was

reasonable to apply the plain language of the securities exclusion against him and deny coverage. To provide coverage under these circumstances would require MLM to cover a specifically uncovered risk. This was a risk that was removed from policy coverage and part of the underwriting decision based on the disclosures by Bullis and his firm. Therefore MLM was justified in denying Bullis a defense.

## DECISION

The Ward action was for violations of North Dakota securities law as alleged against Bullis. Therefore the claim does not fall within the insuring agreement of the MLM policy. Even if coverage did lie the coverage was excluded by the plain language of two relevant exclusions. The face of the Ward action complaints are void of any claim or cause of action that indicates the possibility of coverage, because all claims and causes of action implicating Bullis are barred by Exclusions 1 and 13 in the MLM policy. Therefore, Bullis's motion for summary judgment is **DENIED.** MLM's motion for judgment on the pleadings, treated as a motion for summary judgment, is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 10th day of December, 2007.

                                                  /s/   Ralph R. Erickson
                                              Ralph R. Erickson, District Judge
                                              United States District Court